GARY BLACK ,
HOLLI BLACK
101 Auld Court
Green Valley Falls, California 94534
Telephone (707) 373-2960

Plaintiffs are acting:
"In Propria Persona"

FILED
JUL 19 2010
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
for the
# NORTHERN DISTRICT OF CALIFORNIA

GARY BLACK, individually d/b/a Cal Bay Construction and,
HOLLI BEAM-BLACK, individually d/b/a Castle Roofing
Plaintiffs,
**vs.**

GOOGLE, INCORPORATED et al;
and
Does 1 through 100 inclusive,
Defendants.
_______________________________/

Case No. : 3:10-cv-02381-CW

**PLAINTIFF'S BREIF**

Hearing Date: August 12, 2010; 2:00 P.M.

Before: Honorable Claudia Wilken

## INTRODUCTION

1.

Before hearing scheduled on August 12, 2010, at 2:00 p.m. the Plaintiff puts on file with the Court the following brief. The Plaintiffs have filed a complaint with motion for injunctive relief, a declaration with exhibits, and a motion for "Judgment On The Pleadings". The Defendant Google, Inc., filed an 'Answer' to the complaint and each of the causes of action within the complaint with a "Motion For Dismissal". The Defendant, Google, Inc. additionally filed a written stipulation and attestation with the clerk on July 2, 2010 allowing for their Answer, Motion, or Otherwise to be filed on July 2, 2010 rather than June 22, 2010 which was the deadline for answering the complaint. The Plaintiff herein only admits to an oral

Gary and Holli Black
101 Auld Court
Green Valley Falls, California 94534

stipulation with the Defendant for time to 'Answer' the complaint, not motion or otherwise. Therefore the Plaintiff has assumed the Defendant's "Motion To Dismiss" to be Defendant's answer and has filed in response a "Motion For Judgment On The Pleadings" as the Plaintiff never would have agreed to an extension of time allowing for a motion that may Quash, Dismiss, or otherwise set aside the Plaintiff's complaint. The attestation by counsel is false on it's face.

2.

The motion for judgment on the pleadings filed by Plaintiffs allege that no genuine issue of material facts remain allowing the case to be decided as a matter of law. Plaintiffs "Motion For Judgment On the Pleadings" is grounded at lines 4 - 9, page 6 as follows:

> "If the complaint and declaration of Plaintiff are considered true and correct, the Plaintiff believes the only issue outstanding is whether or not the Defendant's programming is "outrageous" and/or exceeds the bounds of an orderly business environment. *Hughes v. Pair,* 46 Cal. 4th 1035, 1050 (2009) Conduct is considered "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. at 1050-51 (quotations and citations omitted)."

**THE COMPLAINT**

3.

Plaintiffs 'Complaint For Damages' alleges the Defendant, Google, Inc. created a program on their web site, referred to in the complaint as, "Courtesy Advertising". The Plaintiff alleged in the complaint (¶s 1 - 3) that Google, Inc. established an endorser-sponsor relationship with the public at large by allowing '*courtesy advertising*' of the Plaintiff's businesses to be placed upon the Google.com web site without the Plaintiff's permission while exaggerating the

benefits of a free product to the public at large and failed to disclose to Plaintiff's businesses a material relationship where one exist between the public at large and the Plaintiff's business. Plaintiff alleged that by Googles' employing said means of marketing the '*courtesy advertising*' for the Plaintiff's businesses the Plaintiffs were harmed by assuming a risk of product and services being misrepresented and the potential liability that accompanies said risk. Plaintiff alleged his business information could easily be accessed by the public from the front page of the Google.com web site. (¶ 18 of the complaint.) The Plaintiff <u>did not</u> allege that Google published the information; only that they endorsed, sponsored, and or allowed the "Courtesy Advertising" programming.

4.

The complaint incorporated 35 paragraphs and 18 pages into 6 separate causes of action. In brief some of the highlights of the allegations are as follows:

a.) Plaintiff alleged Google, Inc. imposed their '*major market force*' as an '*intervention*' and interruption upon Plaintiffs businesses thereafter <u>*causing great damage to Plaintiff for profit*</u> as follows (¶ 17 of the complaint.):

> "The Plaintiff alleges, the Defendant, Google, Inc., derives advertising revenue as a instant and direct result of the plaintiff's direct telemarketing and door-to-door selling efforts rather than from Defendant's own efforts. The Defendant accomplishes this by allowing what is referred herein as *"courtesy advertising"* on their business review web site which is posted publicly on line at http://www.google.com. Everyday the Plaintiff prospects door-to-door, canvasses door-to-door, or sends out mailings he/she produces traffic to the Defendants, Google, Inc.'s web site. Plaintiffs prospects are then able to view an ever changing advertisement sponsored upon the Defendant's web site along with other companies offering the same or similar services. Plaintiff alleges that these acts by the Defendants combine as a major market force *intervention* that is wrongful in that the Plaintiff's prospects are faced with advertising which is misrepresentative, ever changing, 24/7, and very difficult and costly for Plaintiff to adjust when incorrect, illegal, or improper information is being disseminated."

b.) Plaintiff alleged Googles "Courtesy Advertising" programming **requires the**

**plaintiff *by force* to constantly, on a 24/7 basis, monitor Google's web site because Googles programming places Google within the Plaintiff's bidding process before prospective customers during the customers decision making process.** (¶ 16 of the complaint.)

> "The Plaintiff contends the Defendant, Google, Inc., is by force, albeit market force, causing Plaintiff's business to constantly monitor and look over it's shoulder so as not to be ambushed by unknown Internet sources and that the practice of forcing small land based businesses to become Internet savvy constitutes an unfair business practice." (¶ 21 of the complaint.)

c.) Throughout the complaint and the declaration of Plaintiff, **the Plaintiff alleged that Google, Inc.'s programming was non-responsive and that Google ignored Plaintiff's repeated efforts at remedy via there programming.** Plaintiff alleged that anonymous complaints against Plaintiffs businesses in conjunction with competitor advertisements upon the Defendant Google's "Courtesy Advertising" program swayed the Plaintiffs' prospects toward those businesses who had paid the Defendant, Google, Inc., for advertising alongside of Plaintiff's businesses. (¶ 20 of the complaint.)

d.) Plaintiff additionally alleged that on line public reviews ("Courtesy Advertising') may be malicious with regards to persons or parties ***taking revenge* on line rather than seeking justice or administrative remedies**; (¶ 18 of the complaint.) The Plaintiff alleged within the complaint that the **Plaintiff was ignored by the Defendant; not even a return e-mail on multiple occasions.** Cited as follows: (At lines 2 - 4 on page 6 of the complaint & ¶ 22.)

> *"The defendant, Google, Inc., has refused on multiple occasions throughout the past six months to remove, mediate, or even acknowledge damaging advertising directed at the Plaintiffs businesses."* (¶ 22 of the complaint.)

e.) The Plaintiff stated within the complaint:

> "The Defendant, Google, Inc., at all times material to this Complaint acting alone or in concert with others directed, controlled, and had the authority to control or participated in the acts and practices set forth in this complaint via software programming on their web site ..." (¶ 30 of the complaint.)

f.) The Plaintiff alleged the above acts combined to violate various advertising and due process laws throughout the complaint and at ¶ 30 of the complaint stated as follows:

> *"...the Defendant, Google, Inc. knew in advance that their programming was hostile, could and does cause harm by* ***enticing*** *members of the general public to commit illegal acts, which is now continuing on a business as usual basis."*
> (¶ 30 of the complaint.)

g.) Plaintiff supported the complaint allegations by declaration making reference to exhibits. The Plaintiff in declaration evidenced several attempts made by Plaintiff using the Defendants programming whereby all Plaintiff's efforts at getting a response or remedy from Google were ignore. (Plaintiff's Declaration Exhibits B-F)

h.) The Plaintiff also in declaration evidenced "Courtesy Advertising" as being done for profit and that the programming can cause harm to businesses. A communication from Yahoo about their "Courtesy Advertising" program. (Declaration - Exhibit K) Plaintiff also states the Defendant, Google, Inc. does it for profit at 4(a) of this section and within the Plaintiff's declaration (Plaintiff's Declaration Exhibit N) — *"How To Sell Advertising In A Disaster Economy"*.

i.) In declaration the Plaintiff provided copy of a 'Legal Notice' by *White Pages*. The notice states that only companies owned by *White Pages* may duplicated the names, addresses, and phone numbers within their publications. (Plaintiff's Declaration Exhibit M)

j.) Just prior to the filing of the complaint on May 3, 2010 the Plaintiff informed Google, Inc. of a second complaint against their businesses via Googles 'Report Abuse' link within the "Courtesy Advertising" program as follows (Declaration Exhibit F):

..." Now I have two complaints the newest is also a blatant lie. Additionally I'm receiving hate mail at my e-mail address I previously used on my Google Account (gerald@raymondavich.com). I know you do not want to here it but all my recent problems lead directly to Google. I'm preparing a complaint as I said in my letter to your home office. I should have it completed by the end of the week. If these two malicious postings are still on your web site by the time I'm finished I file it. As I said in my letter I do not want your advertising (so called courtesy listing)for my businesses online. -- Gary Black & Holli Beam/Black d/b/a Cal Bay Construction & Castle Roofing"

k.) Plaintiff detailed (Page 5, section 10 of Plaintiff's Declaration) that Plaintiff's businesses were attacked on line at the BBB, Yahoo, and Google over the course of a couple months because of his writings on line rather than problems with Plaintiff's businesses; following is an excerpt:

..."Therefore the plaintiffs now realize the attack is without doubt because of my on line writings which are attached hereto as [Exhibit 'I']. So the complaint filed now takes on another meaning to me in that my rights to communicate in writing freely under my own name on line are greater than some 'anonymous coward' trying to destroy my livelihood by use of the Defendant's malicious advertising program."

5.

## Overview of the Complaint

An overview of the complaint and declaration reveals the complaint arose do to Google, Inc.'s refusal to respond to the Plaintiffs inquiries on Google's "Courtesy Advertising" program and by U.S. mail as the Plaintiff had diligently notified Google that his businesses were being devastated by Google Maps and Google Places. Plaintiff pointed out in declaration that the BBB and Yahoo both had responded to Plaintiff and promptly removed content damaging to Plaintiff's businesses.

The complaint on it's face makes allegations against Google's "Courtesy Advertising" programming and Google for Google's ignoring the distressed plaintiffs for months, having an ineffectual programming for dispute resolution with suspension links and pin numbers that are ineffectual, and violated Plaintiff's namesake without

permission for profit.

Plaintiff alleged the Defendant was wrongfully interrupting Plaintiff's businesses, using Plaintiff's business information for purposes of selling paid advertising to others for profit. Defendant also alleged that the Defendant was unfairly driving traffic to their own web site using Plaintiff's day to day work efforts rather than efforts of their own. By declaration the Plaintiff disclosed that Defendant's "Courtesy Advertising" program has interrupted Plaintiff's ability to share children's short stories on line.

**THE ANSWER**

6.

The Defendant, Google, Inc. responded to the Plaintiff's complaint with a "Motion To Dismiss" and "Answer" to each of the causes of action within the complaint.

Defendant's primary defense throughout the answer was in reliance upon the "Decency Act", 47 U.S.C. section 230(c) protecting on line providers from liability for third party content. The Defendants' argue in their "Motion To Dismiss" and really admits to a large portion of Plaintiff's allegations at page 11, lines 15, 16, and 17 as follows:

> *"Google does not owe an impossible-to-fulfill duty to the world to ensure that all speech on the Internet is accurate."*

PLAINTIFF'S LAW ARGUMENTS ON THE DECENCY ACT

1) Plaintiff supports the Decency Act protections provided by Congress for Google; however it protects from third parties, such as when someone puts up a blog or web page defaming another and the search engine finds it on the Internet and enables a consumer to find it in the do course of searching.

The Decency Act <u>does not provide protection</u> for on line services that

actually sponsor-endorse said defamations:

Google **<u>admits</u>** within their answer on page 2, lines 8 - 18 to endorsement and sponsoring of Google Places, ("Courtesy Advertising") and placing itself within the Plaintiffs bidding process as, just as alleged within the complaint as follows:

> "The purpose of Google Places is "to help people make more informed decisions about where to go, from restaurants and hotels to dry cleaners and bike shops [.]"[2] Google Places contains listings for millions of hotels, restaurants, and other businesses. Listings typically contain the address and phone number of the listed business. In addition, users of Google Places can write and post reviews of the businesses."

Even **if** the Court were to determined Google is protected under the "Decency Act" in this case the Plaintiff's *'first person'* rights to free speech and expression of 'short story' on line should out weigh a web site looking for 'third party' protection under the Constitution. Obviously Plaintiff can not write if destroyed financially.

2) If Google intends to be in the business of allowing public complaints against businesses and professionals, as they admit to above, <u>Google must by all acceptable standards of law and ethics enter the arena of dispute resolution</u> and be similar in programming to that which has been tolerated by businesses and professionals from the BBB, Governmental Licensing Agencies, conforming business review sites, and others for decades now. **For nearly a hundred years** there have been well established and long standing traditions adhered to by honest and reputable consumer protection entities. Plaintiff has shared what Plaintiff believes the standard to be with the attorney for Google — as follows:

> "Anonymity of course would need to be abandoned on your consumer-generated content as a business needs to know the source in order to access it's value for resolution. People also are more likely to behave when using their real names, thus very substantially cutting your cost of administration.

If Google is to harvest advertising revenue from the searches (Ads by competitive businesses of like kind.) using the names of others (Standing on the rights of others.), it would first need to obtain permission from the business or profession owners by either phone or mail before posting them online. This makes the subject business a member and subject to a membership agreement in exchange for free advertising, (Courtesy Advertising).

Once a posting is made (Pro or Con) on line by a party other than the business owner there could be a letter by U. S. mail automatically mailed to the business owner as many do not know of you're programming and associated damages caused. Automated pin numbers such as the ones you currently use could be included within the letter allowing the business or professional review to be moved to your dispute resolution dept. and offline. This would give the business an opportunity to resolve the matter and the owner of the comment the opportunity to be silent or re-rate the business or professional favorably."

3) Even if the Court were to decide Google's not liable for the essence of consumer-generated content, It should be held that Google is nevertheless responsible for Plaintiffs damages because the programming and marriages of all the content are in Googles control and Google admittedly endorses and sponsors the program. The Defendant should not be allowed by law or otherwise to enter the dispute resolution business and avoid the expense of resolving said on line disputes within their program. In other words the Defendant, Google, Inc. <u>can not avoid and fail to communicate</u> with a business or professional (ie: The Plaintiff's businesses) when a problem occurs for the business upon their well sponsored program at Google Places and Google Maps.

4) Plaintiff conceads that it's very costly to enter the field of dispute resolution between consumers and businesses; Plaintiff alleges throughout the complaint that Google <u>ignored Plaintiffs requests for relief from their program</u>, meaning that Google is avoiding the cost of resolving disputes and inappropriately making a marriage of several different third party programs under their sponsorship and in defense they are attempting to abuse the purpose and intent of the "Decency Act"

provisions.

5) As a matter of law however both parties to this litigation are in agreement to supporting the "Decency Act".

7.

The Defendant, Google, Inc. also argued in answer against the causes of action individually. The proper outline of such arguments is as follows:

**Violation of Law:** Plaintiff alleged violations of law and ethics (due process) within the complaint and first cause of action. The Defendant, in answer, cited a few Court cases without details suggesting the Plaintiff's first cause of action should be dismissed. The Defendant did not address the actual material allegations of the violations of law alleged within the complaint but rather stated the Plaintiff did not have standing in the community for making the allegation.

PLAINTIFF'S ARGUMENT ON THE VIOLATION OF LAW/FIRST CAUSE OF ACTION

The Defendant uses liberally the U.S.C., specifically, section 230(c) in defense. The Plaintiff uses U.S.C. specifically, sections 1365 - 1365(b) within the complaint. The Plaintiffs believe their small proprietorships should by law have access to the same U.S.C. as is being used by the Defendant.

**Breach of Contract:** At page 7 of Defendant's motion/answer defendant alleges the Complaint failed to state a claim for Breach of Contract under Rule(b)(6) and Rule 12(b)(1). At page 7, lines 17 - 19 of the Defendant's answer the Defendant misdirects the Court in argument. The Defendant is misguided and intentionally misdirecting the Courts attention to third party content review of Plaintiff's businesses, at page 7, lines 17 - 19 of the Defendant's answer. The Defendant did not address the material issue/allegation within the complaint which is as follows:

PLAINTIFF'S ARGUMENT ON BREACH OF CONTRACT/SECOND CAUSE OF ACTION

The Breach of Contract cause of action within the complaint states there exists a contract between the Plaintiff and Defendant via Googles TOS at ¶ 43 of the complaint and that Google was negligent with their programming not the third party review; and further states at ¶ 44 that Google violated the Plaintiff by inflicting injury upon the Plaintiff intentionally. ¶ 23 is also within the Breach of Contract cause along with others which states in part: "... In short, the defendant Google, Inc. has held itself out by way of it's programming as a deciding factor in the plaintiff's bidding process and ignored plaintiff's requests for a fair or reasonable dispute/resolution process while in violation of Federal and State law." Plaintiff believes the statement that there's a contract, they were negligent, Plaintiff was injured and ignored all breach that contract. Plaintiff believes a contract invokes and implies duty.

**Unfair Business Practices/False Advertising:** At page 7, lines 27 - 28 of the Defendant's answer the Defendant again misdirects the Court in argument. The Defendant is misguided and intentionally misdirecting the Courts attention to third party content review of Plaintiff's businesses. The Defendant did not address the material issue/allegation within the complaint. The Plaintiffs alleged Google should not benefit by the plaintiff's daily direct selling and prospecting efforts and that Plaintiff's work was on a daily basis being hijacked by the Defendant's "Courtesy Advertising" program *by force* and that Plaintiff was *being required to monitor Googles web site daily*. The Plaintiffs additionally alleged as follows:

> *Please also see section 4 above at page 3, 4, 5 or ¶'s 20, 21, 22 of the complaint which are all incorporated into this cause of action.*

**Negligence:** At page 8, lines 5 - 6 of the Defendant's answer the Defendant again

misdirects the Court in argument. The Defendant is misguided and intentionally misdirecting the Courts attention to third party content review of Plaintiff's businesses. The Defendant did not address the material issue/allegation within the complaint. At ¶'s 53, 54, 55 of the complaint, the fourth cause of action does not cite third party content but rather Googles processes and programming. They read as follows:

"Plaintiff herein incorporates paragraphs one through fifty-two into this Fourth Cause Of Action and alleges that the Defendants, Google, Inc., acted negligently in handling the on line business review 'Courtesy Advertising' processes and damaged the Plaintiffs financially and emotionally as a direct result of their negligence."

"The plaintiff further alleges the Defendant, Google, Inc., was negligent and inflicted injury intentionally upon the Plaintiffs by very bad oversight of the their business review programming."

"The plaintiff further alleges the Defendant, Google, Inc., was negligent and inflicted injury intentionally upon the Plaintiffs by ignorance of the Plaintiff's many notices to the Defendant, Google, Inc. informing them that Plaintiff was being harmed illegally and was suffering financially as a result thereof."

So again the Defendant did not address the material issue/allegation within the complaint.

**Misrepresentation:** At page 8, lines 5 - 6 of the Defendant's answer the Defendant again misdirects the Court in argument. The fifth cause of action within the complaint at ¶ 57 is specific as follows:

> "Specifically, the plaintiff alleges that Plaintiffs' prospects and customers are wrongfully influenced, without the plaintiff's permission, by the defendants failure to allow the plaintiffs to remove themselves from the on line advertising process or inhibiting said removal."

**Intentional Infliction of Emotional Distress:** At page 8, lines 20 - 21 of the Defendant's answer the Defendant again misdirects the Court in argument to third party content. The cause of action for emotional distress within the complaint, at ¶ 60, is specific as follows and does not state anything about third party content:

> "Plaintiff herein incorporates paragraphs one through fifty-nine into this Seventh Cause Of Action and alleges that the Defendants, Google, Inc., intentionally inflicted emotional distress upon the Plaintiffs by intentional negligence, inattentive business practices, violation of common decency, violation of law, and unfair business practices for the purpose of selling advertising rather than the purpose of free marketing of 'Courtesy Advertising' for businesses and professionals."

## NO SUBSTANTIVE FACTS AT ISSUE

8.

So whereas the Defendant, Google, Inc., has answered the 'Complaint For Damages' with a motion to dismiss it, there are no substantive facts in dispute, in fact the Defendant admits to a huge portion of the allegations within the complaint. There exist only issues of law for the Court to decide as outlined above and an issue of damages to wit:

> The Defendant, Google did or did not act in an outrageous manner unsuited for existence within an orderly business environment which may be decided by the Court.

## THE ISSUE OF SURPRISE

9.

The Plaintiff shared with Google's attorneys prior to their filing for a motion to dismiss that Plaintiffs were attacked for Plaintiffs on line writings and that the Plaintiff had a whistle blower (Plaintiff's Declaration Exhibit K). Defendants also had access to the complaint so an element of surprise does not exist with regards to the declaration by Plaintiff.

## THE ISSUE OF DAMAGES

Defendants Duty At Dispute Resolution

10.

The Plaintiff alleged in complaint that Google, Inc., turned a blind eye towards Plaintiff's business or profession when serious on line damage occurred from their advertising of Plaintiff's business without permission, inadequate programming, and ignoring of the Plaintiff's inquiries.

11.

The Defendant, Google, Inc., uses their **perceived** protection to ignore damage caused by

their own sponsorship of the "Courtesy Advertising" program — they do not deny it which is a good portion of Plaintiff's complaint, they admit it within their "Motion To Dismiss" at page 11, lines 15, 16, and 17 which states as follows:

> *"Google does not owe an impossible-to-fulfill duty to the world to ensure that all speech on the Internet is accurate."*

The Plaintiff stated within the motion for judgment as follows:

> "... in the United States we have laws and regulations whereby it's citizens and enterprises, must presuppose a respect for the law in order to avoid chaos and serious violation to the rights of others. In doing so the duties and responsibilities of being in business are born on each and every business including the Defendant, Google, Inc. and need not necessarily be made in writing within the "Complaint For Damages".

12.

The Plaintiff believes that if a company such as the Defendant, Google, Inc. provides, endorses, and/or sponsors a "Courtesy Advertising" program or business review program whereby businesses or professionals are seriously damaged, then Google has in fact by tradition of law and ethics entered the dispute/resolution process and are obligated **not** to turn a blind eye towards Plaintiff when his businesses are wrongfully damaged as a direct result of their programming. Plaintiff believes in this case the Defendant's ignorance toward Plaintiffs constitutes an outrageous act beyond the bounds of what's acceptable within an orderly business environment. As stated in the complaint and pleadings Google was the only on line program causing the Plaintiffs damages because they would not respond; Yahoo and the BBB were difficult but always communicated and took proper action as Plaintiff's businesses were being attacked on line.

13.

As outlined above Google admits to endorsement-sponsorship of the programming and also admits their program to be *"... an impossible-to-fulfill duty.."* as quoted from the Defendant above. Therefore, if the Court were to decide the Defendant in fact had an obligation to

accommodate the Plaintiff in favor of a long standing tradition in the U. S. business community as cited above at page 9 of this brief, then the Plaintiff would be entitled to judgment and the Defendant's acts may or may not be deemed outrageous by the Court.

14.

The Plaintiff has documentation for $50 - 70,000.00 in actual damages as well as six months of lead logs containing Plaintiffs bids that were lost. Lost bids are difficult to accurately ascertain which is how the Plaintiff arrived at the 575K figure. The Plaintiff suffered the following damages:

1.Contract cancellations;

2. Lost bids;

3. Existing customers turning on the Plaintiff viciously after their roofs were started as some customers apparently check on line after Plaintiff shows up and starts the project;

4. Nearly lost our home as a result of dealing with the on line attack and lost income;

5. The Plaintiff as a new writer (6 months) was forced to stop writing in early December because of lost income and time dealing with the attack.

Plaintiff has asked for $575,000.00 in statutory damages and $20,000,000.00 in damages for the intentional infliction of emotional distress (punitive). If it pleases the Court Plaintiff will present at hearing actual evidentiary for actual and statutory damages or in the alternative Plaintiff hereby request permission and or date for a separate hearing on the issue of damages so Plaintiff may show proof of loss.

Respectfully,

_________________________ Dated: JULY 19, 2010
GARY BLACK, individually plaintiff

_________________________ Dated: July 19, 2010
HOLLI BEAM-BLACK, individually plaintiff

# CERTIFICATE OF SERVICE BY US MAIL

I, Jose G. Torres, declare:

I am employed in Solano County. I am over the age of 18 years and not a party to the within action. My business address is: 1440 Military West; suite #104 Benicia, California 94510. I am readily familiar with depositing mail with the United States Postal Service. On this date, I served on each party listed below

**PLAINTIFF'S BRIEF; Hearing date: August 12, 2010; 2:00 P. M.**
**Before: Honorable Claudia Wilken**

by placing it into an envelope with fully paid postage thereon, sealed the envelope, and delivered the envelope for mailing to the United States Post Office in Benicia, California.

Wilson Sonsini Goodrich & Rosati
attorneys at law
650 Page Mill Road
Palo Alto, California 94304-1050

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed at Benicia, California 94510 on July 19, 2010.

JOSE G TORRES
Jose G. Torres